**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| TYLER M. PAETKAU, on behalf of himself And all others similarly situated, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 25-cv-00721-FJG |
| HUSCH BLACKWELL LLP, et al., | ) | |
| Defendants. | ) | |

**ORDER**

Pending before the Court are (1) Defendants' Motion to Dismiss for Failure to State a Claim (Doc. No. 23) and (2) Defendants' Motion for Summary Judgment (Doc. No. 40). The Court considers both motions, below.

## I. Background

Plaintiff Tyler Paetkau joined Defendant Husch Blackwell LLP as a partner in May 2022. He left the firm in July 2025. Shortly thereafter, on September 16, 2025, Plaintiff filed the present lawsuit, alleging that Defendants (which include Husch Blackwell LLP and the firm's executive board and its members) violated ERISA by failing to timely transfer certain of his contributions to the Husch Blackwell LLP 401(k) Plan ("Plan"), and instead co-mingling these contributions in other firm accounts. He brings this lawsuit, on behalf of himself and a putative class of participants and beneficiaries of the Plan, against all defendants, for: (1) Breach of the exclusive purpose requirements (violation of ERISA § 403, 29 U.S.C. § 1103); (2) Breaches of the duties of loyalty (violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A)); (3) Breaches of the duties of prudence (violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B)); (4) prohibited transactions (violation

of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D)); (5) self-dealing (violation of ERISA § 406(b), 29 U.S.C § 1106(b)); and (6) breach of fiduciary duty (violation of ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3)).

In their motion for summary judgment, Defendants assert that all of the counts in Plaintiff's complaint rely on 29 C.F.R. § 2510.3-102, which provides that participant contributions are considered Plan assets and must be deposited in participants' Plan accounts no later than the 15th business day of the month following the withholding. The contributions that Plaintiff complains about, however, were categorized as employer contributions by Defendants, and Defendants therefore argue that the deadlines imposed by 29 C.F.R. § 2510.3-102 do not apply to those funds. Defendants argue that, because Plaintiff has mischaracterized the nature of the challenged contributions, he is not entitled to any of the relief he seeks in his Complaint.[1] Plaintiff, on the other hand, argues that the funds were deducted from his paychecks as an employee and his contributions ought to have been paid into his Plan account by the deadlines set forth in 29 C.F.R. § 2510.3-102.

**II. Facts**

Husch Blackwell LLP ("Husch" or the "Firm") is a limited liability partnership organized under the laws of the state of Wisconsin. The Husch Blackwell 401(k) Plan

[1] Defendants also argue that Section 10.3 of the Plan, which bars Plan participants from filing claims based on "a failure, inaccuracy or incorrect thing that is required to be the subject of a notice required by this Section if the Participant . . . fails to notify the Plan Administrator within such 30 day period," bars Plaintiff's claims. However, as the Court understands Plaintiff's claims, they are that the underlying plan is unlawful under ERISA, and trust documents cannot excuse trustees from their duties under ERISA. Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 422–23 (2014). Therefore, neither the motion to dismiss nor the motion for summary judgment can be granted on this basis.

("Plan") is a defined contribution plan as described in Section 401(k) of the Internal Revenue Code, and is subject to the provisions of ERISA. The Firm is the Plan Sponsor and, in the absence of an alternative appointment, the Plan Administrator under ERISA § 3(16), 29 U.S.C. § 1002(16), as well as a named fiduciary under ERISA § 402(a), 29 U.S.C. § 1102(a). The Firm was also a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), based on its discretionary authority over Plan management and administration. The Plan Administrator has the sole duty and power to administer the Plan. The Plan's fiscal year runs from January 1 to December 31 of each year, which coincides with the Firm's taxable year.

The Plan establishes, among other things, an individual retirement account ("Participant Account") which holds Plan contributions associated with each participant. There are two sources of contributions to Participant Accounts that are relevant to this action: (1) elective contributions made at the discretion of participants (elective participant contributions), and (2) non-elective contributions made by the Firm (employer contributions). Id. §§ 4.1, 4.3, 4.5; Ex. 4, Second Amendment to Plan, § 4.3. With respect to elective participant contributions, Plan participants can make personal pre-tax contributions through elective deferrals, i.e., by electing to have a portion of their "Covered Compensation" withheld as contributions to their retirement accounts. These pre-tax, elective deferrals are voluntary contributions made at the discretion of each participant under Section 401(k) of the Internal Revenue Code (the "Code"), and are subject to the annual dollar limitations prescribed by Sections 402(g) and 401(k)(11) of the Code. There is no dispute that Plaintiff's elective contributions were deposited timely.

With respect to non-elective contributions, the Plan sets forth provisions allowing for employer contributions. Article IV of the Plan authorizes the Firm, in its discretion, to

make end-of-year "Employer Non-Safe Harbor Contributions" (which Defendants refer to in their briefing as "Year-End Employer Profit-Sharing Contributions") for all Plan participants. The firm deposited Plaintiff's Year-End Employer Profit Sharing Contributions in the first quarter of the following year. During Plaintiff's partnership in the Firm, Year-End Employer Profit-Sharing Contributions were made to eligible Plan participants each year, including employees and partners. The Year-End Employer Profit-Sharing Contributions are funded by the Firm's partners, and the contributions to partners are funded through periodic holdbacks from each partner's distributed compensation, recorded on their pay statements—including Plaintiff's—as "Mandatory YE PS," meaning "mandatory year-end profit sharing" (the "Mandatory YE PS Contributions"). These Mandatory YE PS Contributions are withheld from the partners' compensation throughout the year, and are mandatory for every partner of the Firm who has met the service time required by the Plan.

The Firm is governed by a partnership agreement which outlines the rights, responsibilities, and obligations pertaining to the partnership and establishes decision making processes among partners. Husch Blackwell's partners are divided into Equity Partners and Fixed Income Partners. Equity Partners receive "variable incomes tied to the Amount Available for Distribution," while Fixed Income Partners, such as Plaintiff Paetkau, receive "fixed, formulaic, contractually agreed, or guaranteed incomes" not tied to the Amount Available for Distribution. For Fixed Income Partners, the Firm set a "budgeted base compensation," which was unaffected by whether the Firm ultimately exceeded or fell short of its overall budget for the year. When the Firm generated total revenue exceeding the Firm's annual budget ("Overage Amounts"), or revenue fell short of the Firm's annual budget ("Overage Shortfalls"), the Firm divided the Overage Amounts

or Overage Shortfalls among Equity Partners, not Fixed Income Partners.

On May 6, 2022, Husch sent an Offer Letter to Plaintiff inviting him to join the Firm as a fixed income partner in the Firm's Oakland office. The Offer Letter stated that Plaintiff would be eligible to participate in the Plan upon joining the Firm. It explained that Plaintiff would be entitled to make elective participant contributions immediately following his admission to the partnership, and would be subject to a mandatory contribution beginning July 2023 or January 2024. The Offer Letter also informed Plaintiff that, "as with all partners of the Firm," he would be required to fund an employer contribution equal to 3% of his compensation, subject to the safe harbor non-elective contribution maximum established annually by the IRS. This is described as the "Semi-Monthly Employer Profit-Sharing Contribution." Second, Plaintiff was required to fund the Year-End Employer Profit-Sharing Contribution which would be made to his Plan account from his own share of the Firm's net income. Regarding that contribution, the Offer Letter explained that funding for the contribution would be held back from his distributed compensation "throughout the year," but would only be "contributed to the plan following the close of each year." Ex. 11, Offer Letter, pp. 2-3. The Firm's offer to Plaintiff was conditioned on Plaintiff's agreement to be bound by the Fourteenth Amended and Restated Partnership Agreement, a copy of which was attached to the Offer Letter. Id. at p.3. The Offer Letter explicitly declared that Plaintiff "shall be subject to all the terms and conditions of the Partnership Agreement." Id. at p.2. On May 7, 2022, Plaintiff accepted Husch's offer to join the partnership by sending a countersigned copy of the Offer Letter to the Firm.

The Partnership Agreements in effect during Plaintiff's tenure governed the rights and obligations of Firm partners, including their rights to compensation and obligations to fund certain Firm expenses. Exs. 11, 13 - 15, Partnership Agreements, §§ 4.1-4.7. During

Plaintiff's tenure, the Firm issued semi-monthly payments to its partners, each in the amount of 1/24th of the partner's Budged Base Compensation, less holdbacks for certain individual and firm expenses. Partners may elect to have a portion of their semi-monthly distributed compensation held back as elective contributions to the Plan. For the years 2022, 2023, and 2024, Plaintiff made the maximum contribution for elective deferrals into the Plan account ($27,000 in 2022, $30,000 in 2023, $30,500 in 2024).

If the Firm elects to make Year-End Employer Profit-Sharing Contributions to the accounts of Plan participants in a fiscal year, partners of the Firm who have completed at least one fiscal year of service prior to July 1 are obligated to fund the Firm's contributions to their own accounts. (Plaintiff, however, argues that these funds were not the Firm's contributions as they were made from funds deducted from Plaintiff's pay statement.) Instead of waiting until the end of the fiscal year to hold back each partner's Year-End Employer Profit-Sharing Contributions, the Firm utilizes mandatory contributions made semi-monthly from each partner's draw account. The Firm has a policy to return Year-End Profit Sharing contributions who leave the Firm before the end of the Plan year.

The Firm deducted $29,700.00 from Plaintiff's 2023 compensation as YE PS Contributions, and that the same amount was deposited to Plaintiff's account during the first quarter of 2024. The Firm deducted $10,350 from Plaintiff's 2024 compensation as YE PS Contributions, and that the same amount was deposited to Plaintiff's account during the first quarter of 2025. The Firm deducted $15,315.00 from Plaintiff's 2025 distributed compensation as YE PS Contributions, and that amount was returned to Plaintiff instead of being deposited in the account. On or about July 25, 2025, Plaintiff's partnership with the Firm was terminated, effective August 29, 2025, by a vote of the Firm's Executive Board.

## III. Defendants' Motion for Summary Judgment (Doc. No. 40)

### A. Standard

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–90, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586–90.

A nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citations and quotations omitted).

### B. Analysis

As discussed previously, this case turns on whether Plaintiff's Year-End Profit Sharing Contributions qualify as participant contributions under 29 C.F.R. § 2510.3-102 (as argued by Plaintiff), or whether they are employer contributions (as argued by

Defendants).[2]

Defendants argue that the treatment of Plaintiff's contributions aligns with that of other partners at the Firm (both equity and non-equity) – that the partners bear the cost of providing the employer contributions to their personal accounts. The contributions at issue in this case (Mandatory YE PS Holdbacks) were used to fulfill Plaintiff's obligation as a partner of the Firm to fund a non-elective year-end employer contribution to the Plan, which Defendants characterize as a Firm expense which does not become a Plan asset until the moment it is deposited into the Plan. Defendants distinguish the Year-End Profit Sharing contributions from elective contributions deducted from an employee's wages; elective contributions, whether for partners or other employees at the Firm, are made no later than the 15th business day of the month following the deduction from the employee's wages as is required by 29 C.F.R. § 2510.3–102(a)(1) (the "Participant Contributions Regulation").

Defendants also note that Plaintiff's theory of the case ignores the IRS limits on the types of contributions that can be made to a 401(k) plan. IRS regulations place a cap on participant contributions to a Plan, and Plaintiff deposited the full amount as an elective participant contribution every year he was at the Firm. The IRS regulations have a separate, higher, cap for employer contributions which also may be made to an individual's account. Only if Plaintiff's Year-End Profit Sharing Contributions qualified as employer contributions would Plaintiff be allowed to utilize tax deferrals on those contribution amounts.

---

[2] Plaintiff argues this motion is premature, as discovery has barely commenced. Plaintiff, however, does not point to additional discovery he needs to respond to this motion. The Court finds that this case is ready for ruling.

Specifically, Defendants note that the Participant Contributions Regulation, 29 C.F.R. § 2510.3–102(a)(1), only applies to participant contributions. See also 26 C.F.R. § 401(k)-1 (discussing the treatment of elective contributions as plan assets for purposes of Title I of ERISA); Participant Contributions Regulation, Fed. Reg. Vol 61, No. 153 (Aug. 7, 1996, n.1) (explaining that the "Department's view is that elective contributions to an employee benefit plan, whether made pursuant to a salary reduction agreement or otherwise, constitute amounts paid to or withheld by an employer (i.e., participant contributions), within the scope of § 2510.3–102, without regard to the treatment of such contributions under the Internal Revenue Code"). Defendants further note that with regard to partnerships, the Department of Labor explains that given that "partners do not receive wages," the Participant Contributions Regulation applies only to a partner's elective contributions to the 401(k) plan. Fed. Reg. Vol 61, No. 153, ¶ 6.c. The Participant Contributions Regulation does not mention profit sharing contributions, however. Defendants argue that this shows that the guidance as to when deposits must be made applies only to elective participant contributions, not to year-end profit sharing contributions. Given that employer contributions only are considered "plan assets" when they have been deposited into the Plan (see Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan v. M & S Grading, Inc. (In re M & S Grading, Inc.), 541 F.3d 859, 865 (8th Cir. 2008); Rahm v. Halpin (In re Halpin), 566 F.3d 286, 290 (2d Cir. 2009); ITPE Pension Fund v. Hall, 334 F.3d 1011, 1013 (11th Cir. 2003); Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1234 (9th Cir. 2000)), Defendants argue that all of Plaintiff's claims fail, as Defendants breached no fiduciary duty in relation to Plan assets.

In response, Plaintiff argues that the Year End Profit-Sharing contributions should be considered participant contributions, not employer contributions. Plaintiff argues that

ERISA prohibits fiduciaries from using an employee retirement plan as a personal piggy bank for the employer. See Snyder v. UnitedHealth Group, Inc., CV 21-1049 (JRT/DJF), 2024 WL 1076515, at *1 (D. Minn. Mar. 12, 2024) (finding that defendant could be found liable for making imprudent investment decisions or engaging in prohibited transactions involving elective contributions to a 401(k) fund). Plaintiff argues that, if the Court found the Year End Profit-Sharing contributions to be Plan assets, Defendants have basically admitted that their conduct violates ERISA. To argue that the contributions are Plan assets, Plaintiff looks to his pay stubs, which show that the Year End Profit-Sharing contributions were deducted from Plaintiff's pay. Plaintiff indicates that the partners, not the Firm, fund the Year End Profit-Sharing contributions, and therefore these constitute participant contributions, not employer contributions.

In reply, Defendants note that the label for the Year End Profit-Sharing contributions on Plaintiff's pay statements cannot override the terms of the Plan and Partnership Agreement. See, e.g., Pantoja v. Edward Zengel & Son Exp., Inc., 10-20663-CIV, 2011 WL 7657384, at *7 (S.D. Fla. Aug. 5, 2011), aff'd, 500 Fed. Appx. 892 (11th Cir. 2012) (finding that terminology used by default as part of a company's payroll software program did not override the nature of the contributions as reflected in the defendant's company's ERISA plan). Despite Plaintiff's lengthy arguments in his response that Defendants co-mingled Plan assets with the Firm's operating accounts, Plaintiff fails to demonstrate that the Year End Profit-Sharing contributions became Plan assets from the moment they were deducted from his pay statement. Plaintiff cites many cases involving withholding of employees' elective contributions to ERISA plans; however, Plaintiff does not acknowledge the differences between employees earning wages and law firm partners receiving a draw from the Firm's income.

Plaintiff's Offer Letter provided that Plaintiff would be subject to year-end contributions for each year in which he remained a partner, and that the funding for these contributions would be made through mandatory hold backs throughout the year (and contributed to the Plan at the close of the year). The Court agrees with Defendants that this mechanism of collecting partners' mandatory profit-sharing contributions does not violate ERISA nor does it convert Plaintiff's pay from a partnership draw to employee wages.

For the reasons stated above and in Defendants' suggestions in support of its motion for summary judgment and its reply thereto, the Court finds that Plaintiff cannot demonstrate that the Year End Profit-Sharing contributions were Plan assets until they were deposited into his Plan account. Therefore, all claims in Plaintiff's complaint fail, and summary judgment should be granted.

## IV. Conclusion

For the above-stated reasons, (1) Defendants' Motion to Dismiss for Failure to State a Claim (Doc. No. 23) is **DENIED AS MOOT** and (2) Defendants' Motion for Summary Judgment (Doc. No. 40) is **GRANTED.** This case is **DISMISSED**.

**IT IS SO ORDERED.**

Date: September 2, 2026
Kansas City, Missouri

**/s/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
United States District Judge